THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:18-cr-00146-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| TANNER MOREN EAGLE LARCH, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's First Step Act Motion for Reduction in Sentence [Doc. 161].

I.  **BACKGROUND**

In September of 2018, sheriff's deputies in Jackson County, North Carolina, attempted to detain the Defendant Tanner Moren Eagle Larch at a high school football game because the Defendant was subject to an arrest warrant for violating the terms of his federal supervised release. [Doc. 100: PSR at ¶¶ 7-8]. As a deputy reached out to grab the Defendant's arm, the Defendant began to run and pulled out a loaded handgun. [Id. at ¶ 8]. The Defendant "lost control of the firearm and dropped it to the ground" but kept running. [Id.]. Not long thereafter, the Defendant, while holding a different loaded firearm behind his back, approached five young men standing outside

of a car in the parking lot behind the high school gym. [Id. at ¶ 9]. The Defendant told the boys that he needed a ride, but having seen the gun behind the Defendant's back, two of the boys wrestled the gun from the Defendant's hand. [Id.]. The Defendant again ran away, but was eventually detained after a deputy tased and punched him. [Id. at ¶¶ 9-10]. At the time the Defendant committed these offenses, he was on federal supervised release following two robbery convictions and serving a sentence of 78 months' imprisonment. [Id. at ¶ 45].

A federal grand jury indicted the Defendant and charged him with two counts of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). [Doc. 37]. A jury convicted the Defendant of both offenses. [Doc. 83]. The Court sentenced the Defendant to a total of 92 months' imprisonment, the low end of the advisory guidelines range. [Doc. 106 at 2].

The Defendant appealed [Doc.108], and the Fourth Circuit affirmed his conviction and sentence [Doc. 129]. The Defendant is presently incarcerated at FCI Pollock, and his projected release date is March 1, 2026.[1]

---

[1] See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Jan. 13, 2025).

The Defendant, through counsel, now moves the Court for compassionate release arguing that his exposure to COVID-19, coupled with his underlying medical conditions, warrant his early release. [Doc. 161].

## II. DISCUSSION

A defendant may seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, it appears that the Defendant has exhausted his administrative rights with the BOP. [Doc. 161-1]. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. This policy statement sets forth a list of specified extraordinary and compelling reasons, considered either singly or in combination, that can warrant a reduction in sentence. Pertinent here, the policy statement identifies the following circumstances as an extraordinary and compelling reason for release: (1) "the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority"; (2) "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency"; and (3) "such risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D).

Here, the Defendant is 34 years old. He asserts that he has had a heart murmur and a leaky heart valve since the age of 5 and that he was recently stabbed by another inmate, which necessitated two surgical

procedures.² The Defendant argues that these medical conditions, when combined with the risk of exposure to COVID-19 while incarcerated, place him at an increased risk of severe illness, hospitalization or death from the virus. [Doc. 161 at 6].

The Defendant has not made any showing that his correctional facility is currently the subject of an ongoing outbreak of infectious disease or an ongoing public health emergency. See U.S.S.G. § 1B1.13(b)(1)(D)(i). The U.S. Government's declaration of COVID-19 as a federal public health emergency expired on May 11, 2023.³ Moreover, the Defendant has failed to present any evidence that his medical conditions place him at an increased risk from serious illness or death from COVID-19.⁴ U.S.S.G. § 1B1.13(b)(1)(D)(ii).

Even if the Defendant's health conditions did in fact place him at an increased risk of severe illness or death from COVID-19, the Defendant has

---

² The Defendant has not presented any medical records to support these assertions.

³ See COVID-19 Public Health Emergency, https://www.hhs.gov/coronavitus/covid-199-public-health-emergency/index.html (last accessed Jan. 13, 2025).

⁴ Counsel makes a passing reference, without any citation, to the CDC having identified "major cardiac issues" as an example of underlying conditions which can create potentially increased risk for serious illness or death from COVID-19. [Doc. 161 at 4]. The Defendant's counsel, however, offers no support for the proposition that any of the Defendant's medical conditions are the type of "major cardiac issues" that pose such a potentially increased risk.

failed to demonstrate that this risk "cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D)(iii). The Court notes that the BOP took significant measures to protect the health of its inmates during the COVID-19 pandemic. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.) (discussing BOP actions since the onset of the pandemic). In addition to these measures, BOP has offered a vaccine to all inmates and staff, which offers inmates further protection from the virus. Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given BOP's efforts, the fact that the Defendant faces a potential risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Even if the Defendant could establish an extraordinary and compelling reason for his release, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's crimes demonstrate an extreme degree of disregard for the safety of others. The Defendant possessed firearms at a high school athletic event. He fled from law enforcement, dropping a loaded gun in the process. He then approached a group of high school students with a loaded gun behind his back, asking for a ride. The boys were able to disarm the Defendant, and he fled again. The Defendant was taken into custody only after being tased and punched by an officer. At the time the Defendant committed these offenses, he was on federal supervised release following two robbery convictions and serving a sentence of 78 months' imprisonment. In light of the serious nature of the Defendant's offenses and his criminal history, the Court finds that the relevant § 3553(a) sentencing factors, including the need for the sentence to reflect the true extent and seriousness of the Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the

public from the Defendant's further crimes, counsel against a reduction of the Defendant's sentence.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's Motion for Compassionate Release is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's First Step Act Motion for Reduction in Sentence [Doc. 161] is **DENIED**.

**IT IS SO ORDERED.**

Signed: January 17, 2025

Martin Reidinger
Chief United States District Judge